JAMES P. SNYDER, Appellee, v. WITWER BROS. *et al.*, Appellants.

Contributory Negligence: EVIDENCE. In an action for damages on account of injuries sustained by the plaintiff in falling through an open hatchway in the defendant's storerooms, *held*, that the defendants should have been permitted to show by a witness, who was at the scene of the accident immediately after it occurred, whether there was any difficulty in seeing the locality of the elevator opening, and where it was.

*Appeal from Linn District Court.*—HON. J. D. GIFFEN, Judge.

TUESDAY, MAY 26, 1891.

ACTION to recover damages on account of personal injuries alleged to have been sustained in consequence of the negligence of the defendants. There was a trial

by jury, and a verdict and judgment for the plaintiff. The defendants appeal.—*Reversed.*

*Mills & Keeler*, for appellants.

*M. P. Smith* and *J. J. Powell*, for appellee.

ROBINSON, J.—The defendants, B. H. Witwer and H. E. Witwer, are copartners in the wholesale grocery business, under the firm-name of Witwer Bros. In May, 1888, they were carrying on said business at Cedar Rapids. The ground floor of the building they occupied had at one time been separated into two rooms by a brick wall, each of which was about nineteen feet wide and one hundred and forty feet long. At the time in question that wall had been pierced, and one door and five archways had been made therein, each archway being eight feet wide and nine feet high, and the two rooms were used together as one. They extended lengthwise from east to west, and fronted westward. In the east end of each were a door and two windows. The south room was divided into two nearly equal parts by a wall, which extended from north to south. In that wall there was an archway about ten feet wide and nine and a half feet high. A few feet east of that wall there was a door in the south wall of the building. Four of the archways in the wall which separated the two main rooms were east of the cross wall we have described. The north wall of the north room was unbroken, and the same was true of the south wall of the south room, excepting by the door mentioned. In the north room opposite the third archway from the east end was a freight elevator, the hatchway for which opened into the cellar. The south line of that hatchway was the north line of the wall which was pierced by the archway. Posts at the corners of the hatchway extended from the floor to the ceiling. Boards were nailed on those on the east side to a height of three or more feet, a barrier was fastened to those on the west side, and the space between those on the north side was closed by a picket

gate. The space on the south side was furnished with a
bar, the east end of which was hinged a few feet above
the floor. The west end was free and arranged to be
placed in a notch in the west post, or to be dropped to
the floor. The hatchway was a little more than thirty
feet from the east end of the room. On the south side
of the north room, between the hatchway and the east
end, was a stairway, open, except near the bottom, with-
out risers. Quantities of merchandise were stored in the
two rooms in such manner as to leave passageways in
various directions.

On the morning of the thirty-first day of May, 1888,
the plaintiff went into the office of the defendants, which
was located in the west end of the south room, for the
purpose of making a purchase. He was told by one of
the defendants that employes in the back part of the
store would wait on him. He left the office, and went
eastward in the south room, until nearly opposite the
elevator archway, when he turned northward to go
through it, for the purpose of speaking to a clerk who
was at work in that vicinity. The elevator was in the
second story at the time. The bar on the south side was
down at the west end. The plaintiff walked into the
unprotected opening, fell to the cellar floor, and received
the injuries of which he complains. He claims that he
was injured, without fault on his part, in consequence
of the negligence of the defendants in permitting the
hatchway to remain unguarded and unlighted. The
defendants deny negligence and liability on their part.

The appellants insist, and there was evidence
which tended to show, that the plaintiff knew of the
elevator and its location at the time of the accident;
that when it happened the weather was clear, and the
light from the doors and windows we have described
was ample to disclose to anyone having ordinary eye-
sight and using reasonable care the hatchway and its
condition ; that the accident to the plaintiff and the
consequent injuries resulted from his own want of ordi-
nary and reasonable care. The plaintiff insists, and so
testified, in substance, that the light in the vicinity of

the hatchway was dim ; that the stairway, piles of mer-
chandise and other objects so obstructed the light that
the hatchway could not be seen by the use of ordinary
care ; that he did not know of its existence, and did not
see it, until he fell through it, although he was using
due care at the time.

It thus appeared that a controlling question in the
case was whether, at the time of the accident, there was
sufficient light at and about the hatchway to enable a
person exercising due care to see it. A witness named
Mateer testified for the defendants that he was at the
elevator immediately after the accident ; that he was
there after the plaintiff was brought up from the cellar,
and while he was lying on the floor near the elevator.
After testifying as to the surroundings, he was asked
the following questions : "At the time you got there,
just after the accident, tell the jury whether or not
there was any difficulty in seeing the locality of this
elevator opening, and where it was." "At the time
you stood there at the elevator opening, tell the jury
whether or not there was sufficient light thrown around
the elevator to enable its location and situation to be
readily seen or not." Objections to each question were
sustained. Somewhat similar questions were asked of
other witnesses for the defendants, to which objections
were also sustained. Afterwards, a witness for the
plaintiff named Calder testified that he was at the scene
of the accident after the plaintiff had been brought from
the cellar, and that he saw where he had fallen in.
He was then asked the following question : "You may
state whether there was sufficient light at that time
to see the hole." Objection was made to the question,
but he was permitted, to answer : "No sir ; I don't
think it was." We think this ruling was in conflict
with that which excluded the testimony of Mateer,
and that the latter was erroneous. Whether there
was sufficient light to enable a person using ordinary
care to see the hatchway, was a question of fact,
which it was competent to prove by the statement of
witnesses who had tested it. Their testimony may

have been somewhat in the nature of conclusions, but from the character of the case it was necessarily so, and was more satisfactory than a mere showing as to the location and condition of the doors and windows, the height and location of piles of merchandise, and other facts from which the jury might have drawn a conclusion as to the condition of the light. A knowledge of all such facts might well have left the jury in doubt as to whether the hatchway could have been readily seen. The light was not wholly excluded from the rooms, and its strength could best be told by actual experiments. Care should be taken to have the experiments apply to the conditions as to light under which the accident happened, so far as practicable. Mateer arrived at the elevator before Calder, and made his examination as it is claimed, while the light was the same that it was when the plaintiff fell into the cellar, while it is claimed that the east door of the north room, open at that time, had been closed when Calder arrived. While it was proper for the witnesses to testify as to what they could see, the value of their testimony might have been tested by considering the surroundings, changes in conditions, and differences in points of observation and in eyesight.

The plaintiff claims that the evidence rejected was cumulative merely; therefore, that a new trial should not be granted on account of it. The authorities cited in support of that claim refer to newly-discovered evidence as a ground for a new trial, and have no application to the case under consideration. The defendants were entitled to have all relevant and competent testimony offered by them received and considered by the jury in weighing the evidence. The presumption of the law that they were prejudiced by the rulings in question finds ample support in the record.

What we have said disposes of the controlling questions in the case. Others are discussed, but, as they may not arise on another trial, they need not be determined.

For the reasons indicated the judgment of the district court is REVERSED.